IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JOAN SUMMY-LONG, | : | No. 1:06-cv-1117 |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | (Judge Brann) |
| THE PENNSYLVANIA STATE UNIVERSITY, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

October 9, 2015

Nearly ten years ago, Dr. Joan Y. Summy-Long, Ph.D., filed her sex discrimination claim against Pennsylvania State University and several of its officers and employees. Six attorneys and five discovery extensions later, Plaintiff petitions this Court—on the final day of the fact discovery period—to compel Defendants to comply with a stale discovery request and produce a host of documents that would enlarge the temporal scope of this already-prolonged litigation by twenty-four years. Because that request is overly broad and its enforcement would unduly burden the Defendants, Plaintiff's Motion to Compel Discovery is denied.

**I. BACKGROUND**

Plaintiff filed her sex discrimination Complaint with this Court on June 2,

2006. ECF No. 1. Since that time, Plaintiff's claim has, to put it mildly, taken an "indirect" route to resolution. Most of the contours on the path down which Plaintiff has steered her claim, though numerous and varied, possess slight relevance to the Motion currently under consideration. Consequently, the Court highlights only the most pertinent checkpoints along the lengthy journey that this litigation has steadily become.

On March 24, 2010, Judge Yvette Kane of this Court issued a Memorandum Opinion disposing of Defendants' partial summary judgment motion and assessing the effects of the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. 111-2, 123 Stat. 5, on Plaintiff's claim. ECF No. 92 at 9. "In [that] motion for partial summary judgment, Defendants [sought] a determination that the statutes of limitations attached to the laws at issue foreclose Plaintiff's recovery for events occurring prior to 2003 or 2004 despite the fact [that] some of the discrimination she alleges dates back to the 1970s." Id. at 10. In the March 2010 Summary Judgment Memorandum and in a subsequent November 2010 Motion for Reconsideration Memorandum, ECF. No. 100, Judge Kane agreed and issued the following Order, explicitly limiting the applicable recovery periods as follows:

1. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after February 26, 2004**, in her Title VII claim;

2. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 25, 2004**, in her PHRA claim;

3. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2004**, in her Title IX, Section 1983, Section 1985, and PERA claims;

4. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2003**, in her EPA claim; and

5. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2004**, in her PEPL claim.

ECF No. 100 at 10 (emphasis added).

Since the matter was reassigned from Judge Kane to the undersigned, on January 17, 2013, the Court has dealt, <u>ad nauseam</u>, with a recurring stream of requests on Plaintiff's part to both change counsel and extend the time allotted for discovery. All told, Plaintiff has thus far contracted with six different attorneys. Unfortunately for this Court, Plaintiff's propensity to exhaust counsel has become "a not altogether surprising" facet of this litigation. ECF No. 178 at 1.

With six new lawyers have come Plaintiff's continued efforts to extend the discovery period. This Court has previously extended the discovery deadline five times for Plaintiff. ECF No. 164 (first, extending discovery through January 10, 2014); ECF No. 166 (second, extending discovery through April 23, 2014); ECF No. 168 (third, extending discovery through July 22, 2014); ECF No. 175 (fourth, extending discovery through June 3, 2015); and ECF No. 203 (fifth and finally, extending discovery through August 7, 2015). In fact, even before it had granted the final extension, this Court had already remarked in a prior Order that it "[could]

envision no conceivable exception to this clearly articulated deadline," ECF No. 178 at 3, and that "no further extensions of time to complete this rather fundamental litigation task would be permitted." Id. at 2–3.

Yet, on the final day of the fact discovery deadline, Plaintiff came to this Court seeking to compel Defendants to comply with a stale 2014 discovery request. ECF No. 206. Plaintiff filed the initial request, which she now seeks to compel, on January 3, 2014. ECF No. 207 at 1. Defendants advised Plaintiff of their objections to producing the documents on January 13, 2014 and again on March 13, 2014. ECF No. 211 at 19–20. The Motion to Compel would force Defendants to produce a host of documents that would effectively enlarge the temporal scope of this already-prolonged litigation by twenty-four years. Id. Because that request is overly broad and unduly burdensome and because granting further discovery extensions to Plaintiff would strain the bounds of reasonableness and fairness to all litigants, the Court denies Plaintiff's Motion to Compel.

## II. LAW

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court . . . and that after final judgment of the district court or final agency order, our review is confined to determining if that discretion has been abused." Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983) (Aldisert, J.) (internal citations omitted). "To find such abuse it is usually

necessary to conclude that there has been an interference with a substantial right . . . or that the discovery ruling is seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Id. (internal citations and quotations omitted). Thus, the Third Circuit has forewarned litigants that it "will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." In re Fine Paper Antitrust Litig., 685 F.2d 810, 817–18 (3d Cir. 1982) (Aldisert, J.) (internal quotations omitted).

"Discovery need not be perfect, but discovery must be fair." Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012) (Baylson, J.). "Despite the generally held view that liberal discovery should be permitted in actions alleging unlawful discrimination, the scope of discovery is not without limits. The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." Hicks v. Arthur, 159 F.R.D. 468, 470 (E.D. Pa. 1995) (Joyner, J.).

Although "courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period of a Title VII lawsuit," Miller v. Hygrade Food Products Corp., 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000), "the scope of Title VII discovery is not without limits." Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996). "Discovery should be

tailored to the issues involved in the particular case." Id. For instance, "[i]n Title VII cases, courts have imposed restrictions on discovery as to time period." Miles v. Boeing Co., 154 F.R.D. 117, 119 (E.D. Pa. 1994).

In determining which materials are discoverable and which are not, a district court must distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010), and demands that are "overly broad and unduly burdensome" Miller, 89 F. Supp. 2d at 657. "The party seeking the discovery has the burden of clearly showing the relevancy of the information sought." Id.

## III. ANALYSIS

### A. Plaintiff's Motion to Compel is denied because limitation of the recovery period to 2003 and after is "the law of the case."

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The doctrine "was understandably crafted with the course of ordinary litigation in mind." Id. "Such litigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which after appeal, the binding finality of res judicata and collateral estoppel will attach." Id. Thus, "[u]nder this doctrine, a court should not reopen issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997) (O'Connor, J.). It may be appropriate

"to depart from a prior holding" only if adherence to the prior ruling would be "clearly erroneous and would work a manifest injustice." See Arizona, 460 U.S. at 619 n.8.

In this matter, the Court is sufficiently convinced that Judge Kane's prior adjudication of the relevant damages period—as it relates both to liability and recovery—was adequately reasoned and appropriately thorough. That ruling does not warrant the back-door repeal that this Court's granting of the instant Motion to Compel would necessarily require. More importantly, the core purpose behind the law of the case doctrine is to establish for the parties a reasonable sense of "settled expectations" about which evidence and case theories will be probative and which will fall outside the action's scope.

Since Judge Kane's ruling nearly five years ago, both parties have been on notice that the relevant time period into which the Court should inquire does not extend any earlier than 2003. The Court agrees with Defendant that "[t]his would be evident to anyone familiar with the history of this proceeding." ECF No. 211. This Court has made clear through its Orders and Conferences with both parties that the burden rests on Plaintiff and her present counsel to familiarize themselves with her case's history. Termination and substitution of counsel does not afford Plaintiff a tabula rasa from which she may litigate anew. Instead, new counsel must stand in the shoes of her prior advocates—regardless of how worn they may

be—and pick up where prior counsel left off, in a case whose scope has largely been settled for at least the past five years.

**B. Plaintiff's Motion to Compel is denied because Plaintiff has limited the scope of her case to 2003 and after through interrogatories.**

It is well established that "interrogatories will serve to clarify the issues and narrow the scope of the dispute." In re Domestic Drywall Antitrust Litig., 300 F.R.D. 228, 230 (E.D. Pa. 2014) (Baylson, J.) (quoting B. Braun Med. Inc. v. Abbott Labs., 155 F.R.D. 525, 527 (E.D. Pa.1994)). Interrogatories "serve an important purpose in helping to discover facts supporting the theories of the parties." Woods v. DeAngelo Marine Exhaust, Inc., 692 F.3d 1272, 1280 (Fed. Cir. 2012) ("Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation.").

In this case, Plaintiff has consistently supplied interrogatory responses establishing that the scope of the litigation extends no earlier than 2003. At the crux of the dispute are a set of interrogatories served on Plaintiff by Defendants on May 25, 2010. Plaintiff served her answers to that interrogatory set on January 12, 2011. Two particular interrogatories in that set—Nos. 7 and 8—were of particular importance to the scope of Plaintiff's claim and explicitly confined the relevant time period to 2003 and later.

Interrogatory No. 7 read as follows:

7. List all years in which you contend a discriminatory compensation decision or practice occurred which affected your pay at any time on or after November 26, 2003.

  (a) Separately for each year you identify, state the specific decision or practice which you contend constituted discrimination against you with respect to your compensation.

ECF No. 210 Ex. 1 at 6. Plaintiff responded to Interrogatory No. 7 as follows:

7) 2003-2004: Denial and lowering of requested salary adjustment
   2004-2005: Denial and lowering of requested salary adjustment
   2005-2006: Denial and lowering of requested salary adjustment
   2006-2007: Denial and lowering of requested salary adjustment
   2007-2008: Downsizing of promised laboratory and office space with transfer to Neural and Behavioral Sciences Department

Id. Moreover, Interrogatory No. 8 read, in pertinent part:

8. Separately for each year and each decision or practice listed in response to Interrogatory No. 7, identify every person who you contend discriminated against you with respect to your compensation.

Id. Plaintiff's full response to Interrogatory No. 8 is available at ECF No. 210, Ex. 1 at 6–7. For the sake of brevity and so as to not replicate the entire response, it suffices to observe that Plaintiff, consistent with her response to Interrogatory No. 7, did not indicate any alleged perpetrators for any year earlier than 2003.

In addition, Plaintiff herself limited the relevant scope of the litigation in her own Interrogatories that she served on Defendants on April 1, 2010. See, e.g., ECF No. 210, Ex. 2 at 7–9 (emphasis added):

1. (a) Please provide a list of all PhD Level employees employed by the Pennsylvania State University College of Medicine for the period of time **from March 2, 2003 to the present day**.

   . . .

2. Please provide a complete list of all factors used by the Pennsylvania State University College of Medicine to determine or set salaries for all PhD Level employees for the period of time **from March 2, 2003 to the present day**.

   . . .

3. (a) Please identify all salary studies done by or on behalf of the Pennsylvania State University College of Medicine regarding salaries of PhD Level employees for any period of time **from March 2, 2003 to the present day**.

Therefore, it is evident to this Court that both parties had previously limited the temporal scope of the instant matter to violations occurring no earlier than 2003. Extending the discovery period to 1978, as Plaintiff so desires, would unnecessarily disturb this established timeframe in a significant way. There is little reason why this Court should permit Plaintiff to stretch the temporal limits of the litigation and thereby permit an investigative second pass in a case that has already lingered in this District for nearly ten years.

### A. Plaintiff's Motion to Compel is denied because Plaintiff's request is overly broad, unduly burdensome, and would unfairly prejudice the Defendants.

Finally, relevant case law on the issue supports Defendant's stance on this

Motion. For instance, the United States Court of Appeals for the Third Circuit in Reisinger v. City of Wilkes-Barre, 520 F. App'x 77 (3d Cir. 2013), affirmed a denial of a litigant's motion to extend the discovery period entered by Judge Richard P. Conaboy of this Court. In Reisinger, the Court dealt with a plaintiff who was "routinely dilatory in compliance with deadlines" and who introduced "scheduling difficulties" that interfered with "the efficient administration of justice." Id. at 81. The district court refused to extend the plaintiff's discovery deadline for a fourth time, citing "judicial economy and administrative efficiency." Id. 78–80. The Third Circuit affirmed the district court, held that it did not abuse its and discretion, and noted that the extension at issue was "the straw that broke the camel's back." Id. at 79.

Similarly, in Nowell v. Reilly, 437 F. App'x 122 (3d Cir. 2011), Judge Thomas M. Hardiman affirmed a denial of a motion to compel discovery entered by Judge Luis F. Restrepo of the Eastern District of Pennsylvania. The plaintiff in Nowell filed a request for production of documents "only nineteen days before the close of discovery." Id. at 124. After the defendants objected to that request, the plaintiff waited twenty days before responding or speaking with defendant's counsel via telephone. Id. at 125. As such, the Third Circuit found "no grounds upon which to conclude that the District Court abused its discretion by denying Nowell's discovery motions." Id.

In the instant case, Plaintiff waited until the very last of the discovery period to attempt to compel Defendants to produce an overbroad swathe of documents. The request does not seek a reasonably specific set of information to fill in a few missing pieces or clarify an ambiguity. Instead, Plaintiff's request is akin to a plea to start all over again from the beginning. That is simply no longer reasonable in this case. Plaintiff filed the initial request, which she now seeks to compel, on January 3, 2014. ECF No. 207 at 1. Defendants advised Plaintiff of their objections to producing the documents on January 13, 2014 and again on March 13, 2014. ECF No. 211 at 19–20. As Defendants point out: "Plaintiff has thus been on notice of Defendants' position . . . since January 2014. Yet, she took no action to pursue the issue . . . until the very last day of discovery—more than 1½ years later." <u>Id.</u> at 20. Since that time and since Judge Kane's ruling, both parties have developed evidence and casted their case theories accordingly. With summary judgment motions looming shortly after disposition of this issue, it would be inherently unfair to Defendants to reverse course after such a lengthy journey only to begin again at square one. It would also violate Federal Rule of Civil Procedure 1's guarantee of a "just, speedy, and inexpensive determination of every action."

**IV. CONCLUSION**

Because Plaintiff's Motion to Compel seeks material that is beyond the bounds of this case and because its enforcement would be unduly burdensome,

overbroad, and unfair to Defendants, the Motion is denied. Throughout their briefs, the parties have shared with the Court two starkly different conceptions of this case. According to Plaintiff, "Defendants have attempted to erect roadblocks and to generally preclude Plaintiff . . . from obtaining the information needed to prove her claims." ECF No. 207 at 2. However, Defendants call that statement "a matter of great irony," ECF No. 211 at 18, because "[d]ue largely to Plaintiff's actions, this case has been delayed time and time again." Id. at 4.

Given this case's history, the Court is inclined to see its progression (or lack thereof) Defendants' way. The circuitous course down which Plaintiff has meandered her claim over the past ten years reminds the Court of an all too true maxim—a maxim that Plaintiff would well be advised to consider before contemplating subsequent litigation strategy or settlement posture. He—or she—who hesitates is lost.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge