IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN SUMMY-LONG, | : | No. 1:06-cv-1117 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

January 7, 2016

Nearly ten years ago, Joan Y. Summy-Long, Ph.D., filed her sex

discrimination claim against The Pennsylvania State University and several of its

officers and employees. Six attorneys and five discovery extensions later, Plaintiff

petitioned this Court—on the final day of the fact discovery period—to compel

Defendants to comply with a stale discovery request and produce a host of

documents that would enlarge the temporal scope of this already-prolonged

litigation by twenty-four years. Because that request was overly broad and its

enforcement would unduly burden the Defendants, this Court ordered that

Plaintiff's Motion to Compel be denied.

Dissatisfied with that Order and with the Court's implicit urging to reorient

1

her claim—a litigation that has for the better part of ten years done scant more than spin its wheels thanks to Plaintiff's proclivity for hiring and firing lawyers—Plaintiff now responds with a Motion to Certify this Court's Order for Interlocutory Appeal, essentially asking this Court to extend the life of this litigation for a few more months to a few more years. If this Court's prior Memorandum and Order was in any way unclear, that is a disillusioned request. Because Plaintiff has failed to show that interlocutory appeal is warranted, her Motion is denied. The Court will now turn its attention to Defendant's Motion for Summary Judgment once ripe.

## I. BACKGROUND

Plaintiff filed her sex discrimination Complaint with this Court on June 2, 2006.[1] As the Court noted in its prior Memorandum, since that time Plaintiff's claim has, to put it mildly, taken an "indirect" route to resolution. Most of the contours on the path down which Plaintiff has steered her claim, though numerous and varied, possess slight relevance to the Motion currently under consideration. Consequently, the Court highlights only the most pertinent checkpoints along the lengthy journey that this litigation has steadily become.

On March 24, 2010, the Honorable Yvette Kane of this Court, then presiding over this case, issued a Memorandum Opinion disposing of Defendants'

---

[1] ECF No. 1.

partial summary judgment motion and assessing the effects of the Lilly Ledbetter Fair Pay Act of 2009 on Plaintiff's claim.[2] "In [that] motion for partial summary judgment, Defendants [sought] a determination that the statutes of limitations attached to the laws at issue foreclose Plaintiff's recovery for events occurring prior to 2003 or 2004 despite the fact [that] some of the discrimination she alleges dates back to the 1970s."[3] In the March 2010 Summary Judgment Memorandum and in a subsequent November 2010 Motion for Reconsideration Memorandum, Judge Kane agreed and issued the following Order, explicitly limiting the applicable recovery periods as follows:

1. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after February 26, 2004**, in her Title VII claim;

2. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 25, 2004**, in her PHRA claim;

3. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2004**, in her Title IX, Section 1983, Section 1985, and PERA claims;

4. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2003**, in her EPA claim; and

5. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2004**, in her PEPL claim.[4]

As the Court recounted in its prior Memorandum and Order, since the matter

---

[2] ECF No. 92 at 9 (citing Pub. L. 111-2, 123 Stat. 5).
[3] Id. at 10.
[4] ECF. No. 100.

3

was reassigned from Judge Kane to me on January 17, 2013, the Court has dealt,

ad nauseam, with a recurring stream of requests on Plaintiff's part to both change

counsel and extend the time allotted for discovery. All told, Plaintiff has thus far

contracted with six different attorneys. Unfortunately, as this Court has previously

observed, Plaintiff's proclivity to exhaust counsel has become "a not altogether

surprising" facet of this litigation.[5]

With six new lawyers have come Plaintiff's continued efforts to extend the

discovery period. This Court had previously extended the discovery deadline five

times for Plaintiff: ECF No. 164 (first, extending discovery through January 10,

2014); ECF No. 166 (second, extending discovery through April 23, 2014); ECF

No. 168 (third, extending discovery through July 22, 2014); ECF No. 175 (fourth,

extending discovery through June 3, 2015); and ECF No. 203 (fifth and finally,

extending discovery through August 7, 2015). In fact, even before it had granted

the final extension, this Court had already remarked in a prior Order that it "[could]

envision no conceivable exception to this clearly articulated deadline" and that "no

further extensions of time to complete this rather fundamental litigation task would

be permitted."[6]

Yet, on the final day of the fact discovery deadline, Plaintiff came to this

---

[5] ECF No. 178 at 1.
[6] Id. at 2–3.

Court seeking to compel Defendants to comply with a stale 2014 discovery request.[7] Plaintiff filed the initial request, which she sought to compel, on January 3, 2014.[8] Defendants advised Plaintiff of their objections to producing the documents on January 13, 2014 and again on March 13, 2014.[9] The Motion to Compel would have forced Defendants to produce a host of documents that would effectively enlarge the temporal scope of this already-prolonged litigation by twenty-four years.[10] Because that request was overly broad and unduly burdensome and because granting further discovery extensions to Plaintiff would strain the bounds of reasonableness and fairness to all litigants, this Court denied Plaintiff's Motion to Compel.[11]

In response, Plaintiff filed a Motion to Certify the Court's Order for Interlocutory Appeal.[12] Because Plaintiff has failed to show that interlocutory appeal is warranted, her Motion is now denied.

## II. LAW

Under 28 U.S.C. § 1292(b), a court may certify a non-final order for interlocutory appeal if the order "involves (1) a controlling question of law (2) as

---

[7] ECF No. 206.
[8] ECF No. 207 at 1.
[9] ECF No. 211 at 19–20.
[10] Id.
[11] ECF Nos. 220–21.
[12] ECF No. 222.

to which there is substantial ground for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[13] As the Honorable Arlin M. Adams, writing for the United States Court of Appeals for the Third Circuit once explained, "[t]he certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present."[14] Accordingly, "in recognition of . . . the maintenance of an orderly judicial system," interlocutory appeals should be viewed as "limited exceptions to the rule of finality so as to relieve any hardship that remorseless application of the rule [of finality] might create."[15] It is thus often repeated that "[a]n interlocutory appeal should be reserved for 'exceptional cases.'"[16]

First, "[i]n determining whether an order presents a controlling question of law, the court must look to whether (1) an incorrect disposition would constitute

---

[13] <u>Knopick v. Downey</u>, 963 F. Supp. 2d 378, 397–98 (M.D. Pa. 2013).
[14] <u>Bachowski v. Usery</u>, 545 F.2d 363, 368 (3d Cir. 1976).
[15] <u>See</u> <u>id.</u>
[16] <u>Knopick</u>, 963 F. Supp. 2d at 398 (quoting <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 74 (1996)). <u>See also</u> <u>Sabree v. Williams</u>, Civ. No. 06–cv–2164, 2008 WL 4534073, *1 (D.N.J. Oct. 2, 2008) ("[A] district court should exercise this discretion and certify issues for interlocutory appeal only sparingly and in exceptional circumstances.").

reversible error if presented on final appeal; or (2) if the question is so 'serious to the conduct of the litigation either practically or legally.'"[17]

Next, "substantial grounds for difference of opinion," as required by § 1292(b), "exist where there is general doubt or conflicting precedent as to the correct legal standard."[18] For instance, "substantial grounds for difference of opinion" are apparent when "there are conflicting interpretations from numerous courts."[19]

Finally, upon deciding whether an appeal would materially advance termination of the litigation, courts should consider "(1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties."[20] Consequently, "where discovery has been ongoing and the case is nearly ready for trial, 'an interlocutory appeal can hardly advance the ultimate termination of the litigation.'"[21]

---

[17] Knopick, 963 F. Supp. 2d at 398 (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir.1974) ("A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal.")).

[18] Cuttic v. Crozer–Chester Med. Ctr., 806 F.Supp.2d 796, 804–05 (E.D.Pa.2011).

[19] See Knopick, 963 F. Supp. 2d at 398 (quoting Beazer E., Inc. v. The Mead Corp., Civ. No. 91–0408, 2006 WL 2927627, *2 (W.D.Pa. Oct. 12, 2006)).

[20] Knopick, 963 F. Supp. 2d at 398 (quoting Patrick v. Dell Fin. Servs., 366 B.R. 378, 387 (M.D.Pa.2007)).

[21] Knopick, 963 F. Supp. 2d at 398 (quoting Bradburn Parent Teacher Store v. Minn. Mining & Mfg. Co., Civ. No. 02–7676, 2005 WL 1819969, *4 (E.D.Pa. Aug. 2, 2005)).

"[B]ecause interlocutory appeals are not favored, the presence of uniqueness, exceptionality, or extraordinary importance of the question of law involved, and the magnitude of [the] case itself, are factors which should be taken into consideration in every case in determining whether 1292(b) certification is appropriate."[22] "The moving party bears the burden of demonstrating that 'exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.'"[23] "Certification should only be granted in the rare case where an immediate appeal would avoid expensive and protracted litigation 'and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.'"[24] Importantly, a "motion for certification should not be granted merely because a party disagrees with the ruling of the district judge."[25]

## III.   ANALYSIS

### A.   Plaintiff's Motion To Certify Is Denied Because She Has Failed To Show That The Contested Order "Involves A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion."

---

[22] Zenith Radio Corp. v. Matsushita Elec. Indus. Co., MDL No. 189, 1979 WL 1689, at *4 (E.D.Pa. Aug.21, 1979).

[23] Interwave Tech., Inc. v. Rockwell Automation, Inc., No. CIV.A.05-0398, 2006 WL 401843, at *5 (E.D. Pa. Feb. 16, 2006) (quoting Rottmund v. Continental Assurance Co., 813 F.Supp. 1104, 1112 (E.D.Pa.1992)).

[24] Interwave Tech., Inc., 2006 WL 401843, at *5 (quoting Milbert v. Bison Labs., Inc., 260 F.2d 431, 433 (3d Cir.1958)).

[25] Max Daetwyler Corp. v. R. Meyer, 575 F.Supp. 280, 282 (E.D.Pa.1983).

Plaintiff has failed to meet her burden of establishing each of the three factors required for interlocutory review under § 1292(b). In fact, in this Court's view, she has proven none. The threshold reality is that the contested Order denied Plaintiff's Motion to Compel Discovery. It was a discretionary order, which conformed closely to the contours of the case as Plaintiff herself had carved them.

Plaintiff's argument that the Court's October 9, 2015 is reviewable under § 1292(b) flatly conflicts with established precedent in this Circuit. Such Orders denying discovery requests are not "controlling questions of law" because they are reserved to the trial court's discretion.[26] As the Honorable Ruggero J. Aldisert, writing for the Third Circuit, has explained, "It is settled in this court that discovery matters generally are not reviewable until after final judgment."[27] Moreover, as Judge Aldisert explained in a prior decision:

> Close questions of finality are not ordinarily presented where, as here, the appeal is from an order compelling or denying discovery. This is

---

[26] "It is well established that the scope and conduct of discovery are within the sound discretion of the trial court . . . and that after final judgment of the district court or final agency order, our review is confined to determining if that discretion has been abused." Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983) (Aldisert, J.) (internal citations omitted). "To find such abuse it is usually necessary to conclude that there has been an interference with a substantial right . . . or that the discovery ruling is seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Id. (internal citations and quotations omitted). Thus, the Third Circuit has forewarned litigants that it "will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." In re Fine Paper Antitrust Litig., 685 F.2d 810, 817–18 (3d Cir. 1982) (Aldisert, J.) (internal quotations omitted).

[27] DeMasi v. Weiss, 669 F.2d 114, 121 (3d Cir. 1982) (citing Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H., 658 F.2d 944, 947 (3d Cir. 1981).

so because such orders bespeak their own interlocutory character. They are necessarily only a stage in the litigation and almost invariably involve no determination of the substantive rights involved in the action.[28]

Applying this rule, another federal court has observed, for example, that a "[p]laintiff's application to certify a garden-variety discovery dispute for interlocutory appeal is baseless."[29]

Janine C. Gismondi, Esquire, counsel for Defendants, frames the posture of this Motion quite fittingly when, in her responsive papers, she points out that "the Court's October 9, 2015 Order does not find <u>all</u> litigants are barred from reaching back . . . it merely holds <u>this</u> litigant cannot do so."[30] "Plaintiff, however," Defendants contend, "misconstrues the limited issue that was before the Court."[31] That is precisely the winning argument for Defendants here.

For too long now, Plaintiff has attempted to warp her discovery requests into tools they are not intended to be, serving litigious purposes they are not meant to serve, ultimately striving to wield them in a roundabout manner that engorges the substantive breadth of her claim in glaring contradiction to prior Orders of this Court. I have thus previously termed Plaintiff's requests as seeking a "back-door repeal" of Judge Kane's 2010 Memorandum on Defendant's Motion for Partial

---

[28] <u>Borden Co. v. Sylk</u>, 410 F.2d 843, 845 (3d Cir. 1969).
[29] <u>Sai v. Dep't of Homeland Sec.</u>, 99 F. Supp. 3d 50, 59 (D.D.C. 2015).
[30] ECF No. 226 at 8.
[31] <u>Id.</u> at 7.

Summary Judgment.[32]

That Memorandum, issued on March 24, 2010, disposed of Defendants'

partial summary judgment Motion, while explicitly assessing the effects of the

Lilly Ledbetter Fair Pay Act of 2009 on Plaintiff's claim.[33] "In [that] motion for

partial summary judgment, Defendants [sought] a determination that the statutes of

limitations attached to the laws at issue foreclose Plaintiff's recovery for events

occurring prior to 2003 or 2004 despite the fact [that] some of the discrimination

she alleges dates back to the 1970s."[34] In the March 2010 Summary Judgment

Memorandum and in a subsequent November 2010 Motion for Reconsideration

Memorandum, Judge Kane agreed with Defendants and issued the following

Order, explicitly limiting the applicable recovery periods as follows:

1. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after February 26, 2004**, in her Title VII claim;

2. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 25, 2004**, in her PHRA claim;

3. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2004**, in her Title IX, Section 1983, Section 1985, and PERA claims;

4. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2003**, in her EPA claim; and

---

[32] ECF No. 92.
[33] ECF No. 92 at 9 (citing Pub. L. 111-2, 123 Stat. 5).
[34] Id. at 10.

5. Plaintiff may recover for discriminatory paychecks or actions that accrued **on or after June 2, 2004**, in her PEPL claim.[35]

In response to that ruling, Plaintiff and her counsel have consistently supplied interrogatory responses establishing that the scope of the litigation extends no earlier than 2003. At the crux of this dispute are a set of interrogatories served on Plaintiff by Defendants on May 25, 2010. Plaintiff served her answers to that interrogatory set on January 12, 2011. Two particular interrogatories in that set—Nos. 7 and 8—were of particular importance to the scope of Plaintiff's claim and explicitly confined the relevant time period to 2003 and later.

Interrogatory No. 7 read as follows:

7. List all years in which you contend a discriminatory compensation decision or practice occurred which affected your pay at any time on or after November 26, 2003.

    (a) Separately for each year you identify, state the specific decision or practice which you contend constituted discrimination against you with respect to your compensation.[36]

Plaintiff responded to Interrogatory No. 7 as follows:

7) 2003-2004: Denial and lowering of requested salary adjustment
2004-2005: Denial and lowering of requested salary adjustment
2005-2006: Denial and lowering of requested salary adjustment
2006-2007: Denial and lowering of requested salary adjustment
2007-2008: Downsizing of promised laboratory and office space

---

[35] ECF. No. 100.
[36] ECF No. 210 Ex. 1 at 6.

> with transfer to Neural and Behavioral Sciences
> Department[37]

Moreover, Interrogatory No. 8 read, in pertinent part:

> 8. Separately for each year and each decision or practice listed in
> response to Interrogatory No. 7, identify every person who you
> contend discriminated against you with respect to your
> compensation.

Id. Plaintiff's full response to Interrogatory No. 8 is available at ECF No. 210, Ex.

1 at 6–7. For the sake of brevity and so as to not replicate the entire response, it

suffices to observe that Plaintiff, consistent with her response to Interrogatory No.

7, did not indicate any alleged perpetrators for any year earlier than 2003.

In addition, Plaintiff herself limited the relevant scope of the litigation in her

own Interrogatories that she served on Defendants on April 1, 2010. See, e.g., ECF

No. 210, Ex. 2 at 7–9 (emphasis added):

> 1. (a) Please provide a list of all PhD Level employees employed by
> the Pennsylvania State University College of Medicine for the
> period of time **from March 2, 2003 to the present day**.
>
> . . .
>
> 2. Please provide a complete list of all factors used by the
> Pennsylvania State University College of Medicine to determine or
> set salaries for all PhD Level employees for the period of time
> **from March 2, 2003 to the present day**.
>
> . . .

---

[37] Id.

3.  (a) Please identify all salary studies done by or on behalf of the Pennsylvania State University College of Medicine regarding salaries of PhD Level employees for any period of time **from March 2, 2003 to the present day**.

Therefore, it is evident to this Court that both parties had previously limited the temporal scope of the instant matter to violations occurring no earlier than 2003. Extending the discovery period to 1978 would unnecessarily disturb this established timeframe in a significant way. Thus, this Court suggested that there is little reason why it should permit Plaintiff to stretch the temporal limits of the litigation and thereby permit an investigative second pass in a case that has already lingered in this District for nearly ten years.

Moreover, the challenged discovery Order does not present an issue where "substantial ground for difference of opinion" exists. "Substantial ground for difference of opinion" requires "one or more difficult and pivotal questions of law not settled by controlling authority," such as "genuine doubt or conflicting precedent as to the correct legal standard," "[c]onflicting and contradictory opinions" or "the absence of controlling law on a particular issue."[38] None of the hallmarks of a split in authority apply to the Court's decision to maintain this matter's established scope by limiting excessive discovery requests.

---

[38] See Hall v. Wyeth, Inc., No. CIV.A.10-738, 2010 WL 4925258, at *2 (E.D. Pa. Dec. 2, 2010).

In fact, the extent to which a plaintiff may reach back beyond the statutory period was settled by Congress when it passed the Lilly Ledbetter Act. The extent to which <u>this</u> Plaintiff may reach back beyond the statutory period, given the passage of the Lilly Ledbetter Act, was settled by Judge Kane in her 2010 decision. Since then, the parties have conducted discovery in accordance with Judge Kane's decision. This dynamic is well detailed in the Court's October 9, 2015 Order. Plaintiff simply offers no split in authority to warrant interlocutory review. Perhaps one day the Supreme Court of the United States will be required to engage in an intellectual exercise as to the outer bounds of the Lilly Ledbetter Act. Given its tenuous proceedings and its now established posture, this is not that case.

Ultimately, Defendants aptly note that the only semblance of a dispute here is "that [Plaintiff] and this Court interpret Judge Kane's decision differently and, not surprisingly, [Plaintiff] does not agree with the Court's interpretation."[39] In denying this kind of a baseless certification request, the Honorable Jan E. DuBois of the United States District Court for the Eastern District of Pennsylvania has previously remarked that "[m]ere disagreement with a ruling does not constitute a substantial ground for difference of opinion, as required under the second factor for interlocutory appeal."[40] This Court would add that to the extent that Plaintiff has

---

[39] ECF No. 226 at 9–10.
[40] <u>In re Powell</u>, No. CIV.A. 06-4085, 2006 WL 3208843, at *2 (E.D. Pa. Nov. 3, 2006).

continued regrets as to the temporal bounds of this litigation, perhaps such regrets are more appropriately a problem for Plaintiff and her past attorneys than for Defendants or this Court.

Upon release of this Memorandum, the parties should consider the established scope of this litigation to be finalized. If Plaintiff remains dissatisfied, she may take an appeal to the United States Court of Appeals for Third Circuit once this Court has entered final judgment and the case is fully concluded.

**B.    Plaintiff's Motion To Certify Is Denied Because She Has Failed To Show "That An Immediate Appeal From The Order May Materially Advance The Ultimate Termination Of The Litigation."**

Certification of the October 9, 2015 discovery Order will not materially advance the ultimate termination of this action. To the contrary, it will have the exact opposite effect, needlessly enlarging this already prolonged litigation. "An immediate appeal materially advances the termination of litigation if it would eliminate the need for trial, simplify the issues for trial, or reduce the burden of discovery."[41] An interlocutory appeal in this matter would simply postpone summary judgment and trial for a later date and would risk increasing the discovery burden here.

---

[41] David v. Signal Int'l, LLC, 37 F. Supp. 3d 836, 839 (E.D. La. 2014).

16

As this Court explained in its October 9, 2015 Order, "Discovery need not be perfect, but discovery must be fair." Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012) (Baylson, J.). Plaintiff here waited until the very last of the discovery period to attempt to compel Defendants to produce an overbroad swathe of documents. The subject request did not seek a reasonably specific set of information to fill in a few missing pieces or clarify an ambiguity. Instead, the Court likened Plaintiff's request to a plea to start all over again from the beginning. Specifically, Plaintiff filed the initial request, which she earlier sought to compel, on January 3, 2014. ECF No. 207 at 1. Defendants advised Plaintiff of their objections to producing the documents on January 13, 2014 and again on March 13, 2014. ECF No. 211 at 19–20. As Defendants point out: "Plaintiff has thus been on notice of Defendants' position . . . since January 2014. Yet, she took no action to pursue the issue . . . until the very last day of discovery—more than 1½ years later." Id. at 20. Since that time and since Judge Kane's ruling, both parties had developed evidence and cast their respective case theories accordingly. With a summary judgment motion now filed, it would be inherently unfair to Defendants, this Court suggested, to reverse course after such a lengthy journey only to begin again at square one.

Moreover, the Court also emphasized that such a ruling would violate Federal Rule of Civil Procedure 1's guarantee of a "just, speedy, and inexpensive determination of every action"—a guarantee that has gained certain prominence since its recent amendment. On December 1, 2015, the Federal Rules of Civil Procedure were amended to, among other goals, encourage greater cooperation among counsel and engage judges in early and active case management. One of the most noteworthy aspects of the 2015 Amendments was the revision of Federal Rule of Civil Procedure 1. That Rule now reads as follows, with the amended portion emphasized:

> These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81.They should be construed, administered, <u>and employed by the court and the parties</u> to secure the just, speedy, and inexpensive determination of every action and proceeding.

The Advisory Committee Notes to 2015 Amendments to Rule 1 explain that "just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way." Thus, according to the Advisory Committee Notes, Amended Rule 1 is intended to "discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay."

"Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure."

The 2015 Amendments were so significant that they comprised the crux of the 2015 Year-end Report on the Federal Judiciary issued by the Honorable John G. Roberts, Jr., Chief Justice of the Supreme Court of the United States.[42] In his report, Chief Justice Roberts indicated that "[t]he amendments may not look like a big deal at first glance, but they are."[43] Although Rule 1 "has been expanded by a mere eight words," Chief Justice Roberts wrote, "those are words that judges and practitioners must take to heart."[44] As the Chief Justice emphasized:

> The underscored words make express the obligation of judges and lawyers to work cooperatively in controlling the expense and time demands of litigation—an obligation given effect in the amendments that follow. The new passage highlights the point that lawyers—though representing adverse parties—have an affirmative duty to work together, and with the court, to achieve prompt and efficient resolutions of disputes.[45]

Accordingly, it is now unmistakable that the Court and the parties in any federal civil action must constantly strive to resolve unsettled disputes with

---

[42] http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf
[43] Id. at 5.
[44] Id. at 5–6.
[45] Id. at 6.

the ultimate end of a "just, speedy, and inexpensive determination of every action and proceeding."[46]

Thus, in analyzing the § 1292(b) factors, particularly the final component aimed at advancement of the litigation, this Court finds it inevitable that amended Rule 1 should weigh upon the certification determination. As such, not only by applying this Circuit's case law on interlocutory certification but also by applying the dictates of amended Federal Rule of Civil Procedure 1, this Court concludes that certification is wholly inappropriate.

## IV.   CONCLUSION

Ultimately, because Plaintiff has failed to show that interlocutory appeal is warranted, her Motion is denied. This conclusion is mandated by law, the Federal Rules of Civil Procedure, and a common sense notion that both parties to a litigation are owed a fair fight, free from prejudicial delay. As indicated earlier, the Court will turn its attention to Defendant's Motion for Summary Judgment once it has ripened. Upon its disposition, Plaintiff's claim will either be discarded in its entirety or will proceed in whole or in part to a date certain trial before this Court.

An appropriate Order follows.

---

[46] Fed. R. Civ. P. 1.

20

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge